UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-00237-MOC

| | | |
|---|---|---|
| **JOHNATHAN HILLMAN** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS AND CONCLUSIONS**

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Judgment on the Pleadings. (Docs. Nos. 12, 14). Plaintiff has exhausted the administrative appeals process of the Social Security Administration, so this case is ripe for judicial review under 42 U.S.C. § 405(g). After considering the motions and reviewing the pleadings, the Court denies Plaintiff's motion, grants the Commissioner's motion, and issues an order affirming the Administrative Law Judge's decision.

I. **PROCEDURAL HISTORY**

Johnathan Hillman ("Plaintiff") filed an application for supplemental security income in November 2017, alleging his disability began in December 2005. (Tr. 14). His claim was denied twice, first in April 2018 and again in October 2018. (Id.). Plaintiff filed a request for a hearing later in October. His hearing took place in July 2019, in front of Administrative Law Judge Troy M. Patterson ("ALJ"). (Id.). The hearing was online, with Plaintiff in Shelby, North Carolina and the ALJ in Franklin, Tennessee. Vocational Expert Patsy V. Bramlett ("VE") testified over the phone from an unspecified location. (Id.).

1

After the hearing, the ALJ issued an unfavorable decision in September 2019. (Tr. 7). Plaintiff requested a review of the decision in November. (Tr. 5). The Appeals Council denied review in July 2020, making the ALJ's decision final and subject to review in this Court. (Id.). Plaintiff filed a civil complaint against Andrew M. Saul, the Commissioner of Social Security ("Commissioner"). (Doc. No. 1). In August 2020, Plaintiff filed a motion for judgment on the pleadings, and Defendant filed a motion for summary judgment. (Docs. Nos. 12, 14).

Plaintiff alleges that the ALJ committed three errors. First, he contends that the ALJ failed to incorporate non-exertional limitations on his ability to stay on task. (Doc. No. 13 at 7). Second, Plaintiff asserts the ALJ erred in concluding that the evidence did not support the intensity and persistence of alleged symptoms due to his conservative treatment. (Id.). Lastly, Plaintiff argues the ALJ erred in evaluating medical opinions by failing to properly explain the persuasiveness of various opinions. (Id.).

## II. STANDARD OF REVIEW

### A. Introduction

In considering cross-motions for summary judgment, the Court "examines each motion separately" under Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). The Court reviews each motion on its own merits to determine if "either of the parties deserve judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation omitted).

The Court has the power in Social Security cases to affirm, modify, or reverse the Commissioner's decision without remanding the case for a new hearing. 42 U.S.C. § 405(g). A review of the Commissioner's decision examines whether substantial evidence supports the decision, and whether the Commissioner applied the correct legal standards in coming to their

2

Case 1:20-cv-00237-MOC   Document 18   Filed 08/26/21   Page 2 of 13

decision. Johnson v. Barnhart, 343 F.3d 650, 653 (4th Cir. 2005). The threshold of evidence is not high, only requiring relevant evidence that a reasonable person would accept as adequate. Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation omitted).

The Court does not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for the ALJ's when it conducts substantial evidence review. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. So even if the Court would have decided the case differently given the evidence presented, it must defer to the Commissioner and the ALJ if their decision is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The Commissioner is responsible for resolving conflict and making findings of fact in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Therefore, the issue is not if the claimant is disabled, but instead if the ALJ's finding that the claimant is not disabled is supported by evidence and was made by applying relevant law. Craig v. Chater, 76 F3d 585, 589 (4th Cir. 1996).

### B. Sequential Evaluation

The Social Security Act establishes a five-step process to determine whether an individual is "disabled" under the meaning of the Act. 20 C.F.R. § 404.1520. "Disability" is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or has lasted or can be expected to last for a continuous period of over 12 months. 20 C.F.R. § 404.1505(a). The five steps are as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that meets or equals a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. § 404, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. § 404.1520.

If the ALJ finds the claimant is disabled or not disabled at a step, then they make their determination and do not go to the next step. If it is unclear whether the claimant is disabled or not disabled at one step, they will go to the next. The claimant bears the burden of proof in steps one through four. At step five, the burden of proof shifts from the claimant to the Commissioner. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

**C. Administrative Decision**

In 2019, the ALJ used the sequential evaluation process to determine that Plaintiff was not disabled under the meaning of the Social Security Act since November 2017. (Tr. 15). The ALJ found that Plaintiff had not engaged in substantial gainful activity since November 2017 and that he had the severe impairments of major depressive disorder, schizoaffective disorder, and bipolar affective disorder. (Tr. 16). Severe impairments significantly limit the ability to do work for a period of over 12 months, or are expected to last more than 12 months. (Id.). However, Plaintiff was not found to have an impairment that met or medically equaled the severity of one

4

of the listed mental impairments in 20 C.F.R. § 404, particularly in listings 12.04 (Depressive, bipolar and related disorders) and 12.08 (Personality and impulse-control disorders). (Tr. 18); 20 C.F.R. § 404(p)(App. I).

Listing 12.04 has three paragraphs, designated A, B, and C; claimant's mental disorder "must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." 20 C.F.R. § 404(p)(App. I). Listing 12.08 has two paragraphs, designated A and B; claimant's mental disorder "must satisfy the requirements of both paragraphs A and B." Id. Paragraph A includes the medical criteria present in medical evidence. Id. The ALJ did not analyze this explicitly in his decision.

Paragraph B provides the criteria to evaluate how a mental disorder limits the claimant's functioning. The criteria are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Id. To satisfy paragraph B criteria, the claimant's mental impairments must result in one extreme limitation, or two marked limitations in a broad area of functioning. Id. Extreme limitations mean the claimant cannot function independently, appropriately, or effectively on a sustained basis. Id. Marked limitations are seriously limited abilities to function independently, appropriately, or effectively on a sustained basis. Id. The ALJ found that Plaintiff had only moderate limitations in all four of the broad areas of functioning and thus did not satisfy Paragraph B. (Tr. 18).

Paragraph C criteria are used to evaluate "serious and persistent mental disorders." 20 C.F.R. § 404(p)(App. I). "To satisfy the paragraph C criteria, [a claimant's] mental disorder must be "serious and persistent," meaning that there is a history of mental disorder over two years that results in a minimal capacity to adapt to changes with treatment. Id. The ALJ found that the evidence shows "medical treatment and mental health therapy for the claimant's mental

impairments," but "no evidence to support marginal adjustment despite treatment." (Tr. 18). He ruled that Plaintiff did not satisfy Paragraph C.

As a result, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404(p)(App. I). He gave Plaintiff the RFC to perform work at all exertional levels, but with the following nonexertional limitations: he can only complete work involving simple tasks, have occasional interpersonal interaction, and "no more than occasional" changes in his working environment. (Tr. 18).

The jobs that the ALJ found Plaintiff could perform that existed in significant numbers in the workplace were assembler, laundry worker, and inspector. (Tr. 22). Together, these positions constitute 535,000 jobs in the national economy. (Id.). The VE helped the ALJ determine these jobs, and she testified that her testimony was consistent with the information in the Dictionary of Occupational Titles. (Id.).

### III. DISCUSSION

#### A. The ALJ's RFC Determination

An ALJ does not account for a claimant's moderate limitations in concentration, persistence, and pace when they restrict an RFC to simple, routine tasks and unskilled work. Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). "The ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638.

However, an ALJ may construct an RFC without accounting for limitations in persistence, concentration, and pace if they affirmatively explain why these limitations do not create a limitation in a claimant's RFC. See id. The level of analysis should be sufficiently

6

detailed, meaning it assesses a claimant's limitations on a function-by-function basis. See id. at 636; SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (Jul. 1996). The RFC assessment must include a discussion describing how the evidence supports each conclusion, using medical facts and nonmedical evidence. SSR 96-8p at 34,478. "Remand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Plaintiff argues that the ALJ limited him to "performing simple, routine tasks, with only occasional interpersonal contact with coworkers, supervisors, and the public, and can tolerate no more than occasional changes in the work environment" without providing a sufficient explanation. (Tr. 14).

The Court disagrees. The ALJ's analysis of Plaintiff's condition using evidence from the record is sufficient enough to be upheld. Since the ALJ's decision is supported by substantial evidence, the Court must defer to him. Blalock, 483 F.2d at 775. The ALJ noted in his decision that Plaintiff has moderate limitations in understanding, remembering, and applying information, and moderate limitations in relating and working with supervisors, coworkers, and the public. (Tr. 17-18). He also found Plaintiff has moderate limitations in the area of concentration, persistence, and pace. (Tr. 18). These limitations refer to the ability to focus on work and stay on task. (Id.). Plaintiff takes issue specifically with the "concentration, persistence, and pace" function analysis.

The ALJ affirmatively explained why Plaintiff's moderate limitations in persistence, concentration, and pace do not warrant a change to his RFC. Therefore, his RFC does not need to be altered. There was conflicting testimony in the record about Plaintiff's attention span. Plaintiff

and his sister report that he "could only pay attention a couple minutes," but during examinations in February and March of 2018, he was observed to have "good concentration/attention." (Id.). At the administrative hearing, the ALJ noted that Plaintiff was following and participating without difficulty. (Id.). The ALJ weighed the impressions from the state medical examinations and his experience with Plaintiff more heavily than Plaintiff's self-reporting. The ALJ still took Plaintiff's self-reporting on his attention span into account because he ordered for his RFC to limit him to simple, routine tasks. (Id.). However, he did not find Plaintiff's concentration issues serious enough to add additional limitations in his RFC. He affirmatively explained that Plaintiff had good concentration in the hearing and during examinations. Therefore, he did not reason that Plaintiff needed more accommodations in his RFC. The limitations the ALJ established in the RFC are consistent with Plaintiff's moderate limitations and supported by substantial evidence.

## B. The ALJ's Conservative Treatment Assessment

For proper symptom analysis, the ALJ must determine whether the claimant has impairments that could reasonably be expected to produce the pain and symptoms alleged. 20 C.F.R. § 404.1529(a). Then, the ALJ must evaluate the intensity and persistence of these symptoms, including how much they limit the claimant's ability to do work. Id. The ALJ has to consider all available evidence when they make their evaluation. Id. This includes information that "medical sources or nonmedical sources provide about [claimant's] pain or other symptoms," including "what medications, treatments or other methods" the claimant uses to alleviate their symptoms. 20 C.F.R. § 404.1529(c)(3).

Although the ALJ needs to consider treatment when they evaluate whether the claimant has a disability, they must also consider "possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 81

Fed. Reg. 14,166 (Mar. 2016). One of the reasons an individual may not comply with treatment is they cannot afford treatment and "may not have access to free or low-cost medical services." Id.; see also Craig v. Colvin, No. 2:13-cv-27-BO, 2014 WL 2039591, at *3 (E.D.N.C. May 8, 2014). The ALJ can ask about the discrepancy between treatment and alleged symptoms during the administrative hearing, or contact the individual regarding the lack of treatment during the administrative proceedings. Id. A claimant "may not be penalized for failing to seek treatment [they] cannot afford." Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). The characterization of treatment as conservative alone "does not provide any insight into the severity of a given condition" because many severe conditions may be treated by routine and conservative treatment. Ellis v. Colvin, No. 5:13-cv-00043, 2014 WL 2862703, at *9 (W.D. Va. June 24, 2014) (internal quotations omitted).

Plaintiff alleges that the ALJ considered the evidence of his conservative treatment inappropriately because he did not evaluate why Plaintiff may have only engaged in conservative treatment. (Doc. No. 13 at 12). He indicates that he was not able to seek the full extent of treatment that he needed due to financial constraints and geography. (Id.). Plaintiff lives in Shelby, North Carolina. He has not had a long-term steady job in the past 17 years, only reporting $4824.12 in income since 2004. (Tr. 193).

The Court agrees with Plaintiff that the ALJ did not sufficiently investigate Plaintiff's current extenuating circumstances when assessing his treatment. He notes in his decision that Plaintiff's treatment was "conservative" and that medications were helpful to him. (Tr. 20). He did not ask Plaintiff why he did not seek other resources during his hearing, and does not include in his analysis any mention of why Plaintiff may have engaged in conservative treatment out of necessity and not choice. (Tr. 39-48). However, the Court does not find this error grave enough

to warrant a new hearing; the ALJ looked at Plaintiff's treatment history and compared his regimens when he had varying barriers to access, only to find they were the same regimens.

The ALJ assessed Plaintiff's treatment regimen when he had high access to medical care in order to evaluate whether conservative treatment was the optimal course of treatment for Plaintiff. When Plaintiff was incarcerated, he was in therapy and taking medication. (Tr. 388). In 2018 when he was no longer incarcerated, he was in outpatient therapy and taking medication. (Tr. 400). His medical regimen in jail, at the time where he arguably had the most access to treatment, mirrors that of when he was not incarcerated. The similarities in treatment during these different time periods in his life shows that the course of treatment that Plaintiff was undergoing was an appropriate level of treatment for him, and not due to lack of access. Plaintiff does not indicate the treatment he would be seeking if he had access to more resources. He also stated that his medications were helpful to him and he had been taking them as prescribed. (See Tr. 16, 399-413).

This Court is not persuaded that Plaintiff's regimen would be different if he did not have financial and geographic constraints. Plaintiff's history of treatment shows that even when he does have higher access to medical care, he still uses the same regimen of therapy and medication. The ALJ pointed out in his opinion that none of the medical providers who assessed Plaintiff recommended a long-term restriction on his capacity to work either. (Tr. 20). The Court concludes that the ALJ should have inquired into Plaintiff's ability to access treatment and what treatment would look like if he had resources and fewer limitations. But the current evidence shows that Plaintiff would be undergoing the same treatment even if the hospital was right next to his home, and if everything were paid for. This is because Plaintiff's "conservative" treatment

regimen appeared to be working when it was followed. Thus, describing his treatment regimen as "conservative" was appropriate and not an error.

### C. The ALJ's Medical Opinion Evaluation

When ALJs consider medical opinions, they use a set of five factors to determine the persuasiveness of the source. These are supportability, consistency, relationship with the claimant, specialization of the medical professional, and other factors. 20 C.F.R. § 404.1520(c). The ALJs in their determination will explain how persuasive they found the medical opinions in the case record using the five factors. Id. Supportability and consistency are the most important factors in the analysis. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions or prior administrative medical findings, the more persuasive the medical opinions or prior administrative medical findings will be." Id. And the more consistent a medical opinion or prior administrative medical finding is with other medical and administrative evidence, the more persuasive it is. Id.

The ALJ must explain how they considered supportability and consistency for a medical source's opinion or prior administrative medical findings. Id. However, they are not required to explain how they consider relationship, specialization, and other factors. Id.

Plaintiff contends that the ALJ did not properly evaluate the medical opinions of Tiffany Wright, MSW, LCSW, Richard Cyr-McMillon, Ph.D., and Sharon J. Skoll, Ph.D. (Doc. No. 13 at 14). He argues the ALJ failed to properly determine the persuasiveness of the opinions. The Court disagrees because the ALJ's opinion addressed the supportability and consistency of each opinion in his analysis of their persuasiveness. The ALJ is not required to address medical experts' relationship with the claimant, specialization, and other factors.

Dr. McMillon and Dr. Skoll are state agency physicians. The ALJ's reliance upon the opinions of State Agency medical experts are within the ALJ's purview and a proper application of the Commissioner's regulations. State Agency consultants are highly qualified physicians or psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. See Social Security Ruling 96-6p 1996 WL 374180 (S.S.A.). In appropriate circumstances, the opinions of State Agency consultants may be entitled to greater weight than the opinions of treating sources.

The State Agency medical experts opined that Plaintiff could understand and remember basic instructions, sustain sufficient attention to complete simple routine tasks for two hours, complete a normal work week, and make work-related decisions. (Tr. 21). Here, opinions of the State Agency consultants were based on a review of the complete case record, including treatment notes, medical evidence, and office notes of the North Carolina Department of Public Safety, Monarch Shelby, and Partners Behavioral Health Management (Tr. 62-77). Therefore, the ALJ's reliance upon the opinion of State Agency consultants in forming his residual functional capacity was proper and in accordance with the Commissioner's regulations. The ALJ found both of their opinions "moderately persuasive" because they were supported by records from Monarch, a mental health clinic, and consistent with Plaintiff's testimony. (Tr. 16-17, 62-77).

The ALJ found that Tiffany Wright, Plaintiff's therapist, had a persuasive opinion because it was consistent with medical records and Plaintiff's testimony, and it supports the restrictive RFC. (Tr. 21). Ms. Wright opined that Plaintiff was experiencing "significant impairment in his overall global functioning" due to his mental health diagnoses. (Id.). Ms.

12
Case 1:20-cv-00237-MOC   Document 18   Filed 08/26/21   Page 12 of 13

Wright's opinion was supported by and consistent with medical records and Plaintiff's testimony.

The ALJ's analysis could be more descriptive. But it does address the consistency and supportability of Dr. McMillon, Dr. Skoll, and Ms. Wright. This is sufficient to uphold the analysis. The ALJ did not discuss Dr. Cyr-McMillon, Dr. Skoll, and Ms. Wright's opinions in the context of their relationship with the claimant or their specialization, but that is not required by law.

## IV. CONCLUSION

The Court has carefully reviewed the entire record and determined that the ALJ's decision is to be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Judgment on the Pleadings, Doc. No. 12, is **DENIED**, and the Commissioner's Motion for Summary Judgment, Doc. No. 14, is **GRANTED**. Pursuant to the power of this Court to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, the ALJ's final decision is **AFFIRMED**.

Signed: August 26, 2021

Max O. Cogburn Jr
United States District Judge